The STATE of Ohio, Appellee,

v.

JACKSON, Appellant.

[Cite as *State v. Jackson* (1992), 82 Ohio App.3d 667.]

Court of Appeals of Ohio,
Lorain County.

No. 91CA005251.

Decided Sept. 30, 1992.

668

*Gregory A. White*, Lorain County Prosecuting Attorney, for appellee.
*Leonor A. Macchi*, for appellant.

REECE, Judge.

Defendant-appellant, Michael A. Jackson, appeals his conviction of felonious assault, R.C. 2903.11, with a firearm specification, R.C. 2929.71. We affirm.

On October 6, 1990, Johnnie Jackson, Michael's brother, and Thomas Tarrant fought over allegations regarding Thomas's behavior towards Johnnie's

wife. Because Michael and Thomas were friends, Michael went to Thomas's house the next day, October 7, allegedly to clear up any misunderstanding. Accompanying Michael were Johnnie Jackson and Marvin Thompson, a mutual friend of Michael and Thomas. On the way to Thomas's house, Michael showed Marvin a gun which Michael had in his automobile.

Initially, Michael and Thomas began to discuss the events of the prior evening. However, the conversation became heated and a fistfight began. At this time, Johnnie came to the aid of his brother. Two members of Thomas's family, his aunt, Mary Tarrant, and grandmother, Ozelle Tarrant, came outside carrying wooden objects, alleged to be baseball bats or table legs, to stop the fight. The defense produced testimony claiming that Thomas attempted to grab one of these wooden objects during the fight. At about this time, Michael asked Marvin to go to the automobile and bring his gun.

What happened next is in dispute. Every person who witnessed the events testified that Michael first aimed his gun in the air and fired. Michael claims that he only shot in the air once—when Thomas was coming at him with a baseball bat. Further, the defense contends that the gun he possessed shot only blanks and could not harm anyone.

The prosecution's witnesses testified to a more dangerous course of action taken by Michael. Ozelle claimed that Michael threatened to kill Thomas; Thomas stated that Michael only said that he would get him back. The state also presented testimony showing Michael taking a second shot at Thomas, who was standing near Ozelle and Mary. Ozelle testified that she "felt something hot, like a flash, go by." After the second shot, Johnnie, Marvin and Michael fled the scene.

The police were not able to find any physical evidence of the shooting. Michael admits to having discarded the gun as he was running from Thomas's house.

Michael was tried by a jury and convicted of felonious assault with a gun specification. He appeals this judgment and assigns four errors.

### Assignment of Error I

"The trial court erred when it overruled appellant's motion for acquittal pursuant to Ohio Criminal Rule 29."

A trial court may not grant an acquittal by authority of Crim.R. 29 if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus; *State v. Wolfe* (1988), 51 Ohio App.3d 215, 216, 555 N.E.2d 689, 690. In contrast to arguments addressing manifest weight,

challenges to the sufficiency of the evidence do not require the trial court to independently assess the credibility of the witnesses. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218, 485 N.E.2d 717, 720. As this court has often noted, all evidence must be construed in a light most favorable to the prosecution. *Wolfe, supra*, 51 Ohio App.3d at 216, 555 N.E.2d at 690.

■ Michael argues that he did not cause or attempt to cause any harm to Thomas. In support of this, Michael incorrectly states that all the evidence at trial shows defendant held a blank gun and fired it up in the air.

The state produced competent testimony on each element of the offense. Both Ozelle and Mary testified that Michael pointed the gun at them when he took his second shot. Further, Ozelle stated she felt something flash past her when the bullet was shot. Marvin Thompson initially told the police that Michael's gun was a .25 or .32 caliber pistol. Thomas also testified at trial that two shots were fired.

Both Thomas and Ozelle heard Michael threaten Thomas. Ozelle heard Michael say that he was going to kill Thomas. Thomas heard Michael say he was going to "get [Thomas] back." Michael told Marvin to get a gun that Michael had in his automobile. When Marvin returned, Michael took the gun and fired at Thomas.

The two cases cited by Michael involve situations in which the defendant threatened an individual with a gun but did not shoot. See *State v. Green* (Nov. 20, 1989), Fayette App. No. CA 89–04–006, unreported, 1989 WL 139468; *State v. Brooks* (1989), 44 Ohio St.3d 185, 542 N.E.2d 636. In this case, Michael fired his gun, which the jury could construe as further evidence of an attempt to cause physical harm. Also, Michael testified that before he shot he was feeling hostile and his mind was exploding. From this testimony, along with the circumstances, the jury could infer the necessary state of mind. There is sufficient evidence to support the verdict in this case. Michael's first assignment of error is overruled.

### Assignment of Error II

"The trial court erred when it imposed an additional three years of actual incarceration when there was insufficient evidence to support the firearm specification."

■ The state must present evidence beyond a reasonable doubt that a firearm was operable at the time of the offense before a defendant can receive an enhanced penalty pursuant to R.C. 2929.71(A). However, such proof can be established beyond a reasonable doubt by the testimony of lay witnesses who were in a position to observe the instrument and the circumstances

surrounding the crime. *State v. Murphy* (1990), 49 Ohio St.3d 206, 551 N.E.2d 932, syllabus.

In this case, the state was forced to rely on the testimony of lay witnesses to prove that Michael had an operable firearm in his possession at the time of the offense because Michael disposed of the gun. Ozelle stated that she felt something warm flash by her after she heard Michael's second shot. Also, she testified that she heard Michael threaten to kill Thomas.

Both Mary and Marvin offered testimony describing the gun. Marvin testified at trial that he had seen the gun the day of the incident and couldn't tell for sure if it was real or a starter. However, officer Mike Dussel testified that Marvin told him, prior to the trial, that the gun was a .25 or .32 caliber.

In *Murphy, supra,* the Supreme Court found that when a gun was wrapped in a sheet, described by eyewitnesses and the defendant threatened to kill the victim, the state proved, based on the totality of the circumstances, the possession of an operable firearm. In this case, Michael threatened to kill Thomas, the gun was described by eyewitnesses, and the gun was kept under Michael's seat. Further, testimony by Ozelle was consistent with a bullet being shot in her direction. Based on the totality of the circumstances, the testimony produced establishes beyond a reasonable doubt, that Michael had a firearm in his possession. Michael's second assignment of error is overruled.

### Assignment of Error III

"The trial court erred when it failed to give the jury instructions on the lesser included offense of aggravated assault."

The failure of a court to give an instruction on aggravated assault when felonious assault is charged can be prejudicial, reversible error. However, an objection to these instructions must be raised at trial. Crim.R. 30(A) states in part:

"A party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection.   * * *"

Absent plain error, the failure to object to a court's failure to instruct the jury on a lesser included offense is a waiver of the issue on appeal. *State v. Underwood* (1983), 3 Ohio St.3d 12, 13, 3 OBR 360, 360, 444 N.E.2d 1332, 1333. To constitute plain error, an erroneous jury instruction must be so severe that the outcome of the trial clearly would have been otherwise. *Id.* at 14, 3 OBR at 361, 444 N.E.2d at 1334.

The Supreme Court has repeatedly admonished that notice of plain error is to be taken reluctantly. Plain error is to be recognized under Crim.R. 52(B) "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407, 416.

In this case, plain error did not occur. An instruction on aggravated assault is not automatically required when a defendant is charged with felonious assault. Only when a defendant presents sufficient evidence of serious provocation such that a jury could reasonably acquit defendant of felonious assault and convict on aggravated assault must an instruction on aggravated assault be given. *State v. Deem* (1988), 40 Ohio St.3d 205, 211, 533 N.E.2d 294, 299. If the evidence of provocation is insufficient, then an instruction on aggravated assault is not warranted. *Id.*

Whether there was sufficient evidence of serious provocation depends on the defendant's state of mind under the circumstances:

" 'Provocation, to be serious, must be reasonably sufficient to bring on extreme emotional stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the Court must consider the emotional and mental state of this defendant and the conditions and circumstances that surrounded him at the time.' " *State v. Mabry* (1982), 5 Ohio App.3d 13, 19, 5 OBR 14, 20, 449 N.E.2d 16, 23, quoting *State v. Foster* (1979), 60 Ohio Misc. 46, 57, 14 O.O.3d 144, 151, 396 N.E.2d 246, 254.

Serious provocation was not present in this case. While Michael and Thomas had been fighting, the altercation was over when Michael fired his gun. There was testimony that Thomas had a bat, yet that testimony also showed that Michael was some distance from Thomas.

Michael's own testimony showed that he lacked the state of mind necessary for aggravated assault. Michael stated that he was feeling "hostile" and his mind was exploding before he fired his gun at Thomas. Shootings based on feelings of hostility are not consistent with a charge of aggravated assault. We find Michael's third assignment of error without merit.

### Assignment of Error IV

"The trial court erred by failing to rule on appellant's motion for a new trial and in refusing to give appellant the opportunity to present testimony at a hearing on a motion for a new trial made pursuant to Criminal Rule 33."

Initially, it should be noted that the trial court denied Michael's requests for a new trial on March 13, 1992. Therefore, the claim that the trial court has not ruled on Michael's motion is incorrect.

■ A trial court's resolution of a motion for a new trial, pursuant to Crim.R. 33(B), will not be disturbed absent an abuse of discretion. *State v. Schiebel* (1990), 55 Ohio St.3d 71, 564 N.E.2d 54, paragraph one of the syllabus.

The Ohio Supreme Court instructed in *State v. Petro* (1947), 148 Ohio St. 505, 36 O.O. 165, 76 N.E.2d 370, syllabus, that:

"To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." (Citation omitted.) See, also, *State v. Hutchison* (Dec. 14, 1988), Summit App. No. 13626, unreported, at 7, 1988 WL 134289.

Michael produced three affidavits informing the trial court of the substance of the new evidence. The first affidavit was from Thomas and offered Thomas's version of what occurred on October 7; the other two affidavits, from Earl Mason and Marvin Oliver, were identical and offered eyewitness testimony regarding the events in question.

The trial court ruled that Thomas's affidavit would not support a motion for a new trial. Michael again attempts to show that the trial court decision was "unreasonable, arbitrary and capricious" and an abuse of discretion. However, we find no abuse of discretion on the record before us.

■ The contents of Thomas's affidavit were all presented to the jury at the trial. That affidavit is hardly the recantation testimony that Michael claims. Even if it were, there exists substantial testimony supporting a conviction. Essentially, each allegation of the affidavit was included in Thomas's trial testimony. While Thomas's testimony certainly was inconsistent at trial, we cannot find evidence that was heard at a trial to be newly discovered evidence giving rise to the granting of a new trial.

The two identical affidavits of Mason and Oliver also are insufficient. Only one of the allegations in these affidavits possibly presents evidence that is not merely impeaching or cumulative of former testimony. The allegations of Mason and Oliver that two shots were fired, that Michael pointed the gun straight up and fired into the air, and that Michael did not point the gun at

anyone are testimony that was heard at the trial. The only evidence that could be considered new is the allegation that Mason and Oliver knew the gun was a starter pistol. Yet, Michael and Johnnie had testified to this version of events, and Mason's and Oliver's testimony would only serve to corroborate the trial testimony.

Further, even if this testimony were new, there was no showing that Mason's and Oliver's testimony could not have been discovered by Michael with due diligence. Both Mason and Oliver were witnesses to the event. There is no showing on the record that these witnesses were not available to testify at the trial. Before a new trial can be ordered, it must be shown that the new evidence could not have been located with due diligence. *Petro, supra.* Michael has not shown the use of due diligence to discover this evidence before trial and therefore the errors alleged by Michael do not warrant a new trial.

Michael's fourth assignment of error is not well taken. We affirm the trial court's judgment.

*Judgment affirmed.*

QUILLIN, P.J., and COOK, J., concur.